**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

JASON BAKER, et al.,

        Plaintiffs,                              DECISION AND ORDER

vs.                                                   11-CV-6119 CJS

ANSCHUTZ EXPLORATION CORPORATION, et al.,

        Defendants.

_____

**APPEARANCES**

For Plaintiffs:                    Tate Kunkle, Esq.
                                     Napoli, Bern, Ripka & Associates, LLP
                                     350 Fifth Avenue, Suite 7413
                                   New York, NY 10118

For Defendant Anschutz
Exploration Corporation:         Christopher D. Thomas
                                   Nixon Peabody LLP
                                   Clinton Square
                                   P.O. Box 31051
                                   Rochester, NY 14603
                                   (585) 263-1087

                                   Michael J. Guzman, Esq.
                                   Michael Mulvania, Esq.
                                   Kellogg Huber Hansen Todd Evans & Figel PLLC
                                   1615 M Street, N.W., Suite 400
                                   Washington, DC 20036
                                   (202) 326-7910

For Defendant Pathfinder
Energy Services, Inc.:            Marc Jason Shanker, Esq.
                                   Morgan, Lewis & Bockius LLP
                                   101 Park Avenue, 37th Floor
                                   New York, NY 10178-0060
                                   (212) 309 - 7145

## INTRODUCTION

**Siragusa, J.** This case, which was removed from New York State Court, and in which Plaintiffs complain of environmental damage resulting from Defendants' gas and oil drilling, is before the Court on six motions. The pending motions are as follows:

(1) Conrad Geoscience Corp.'s motion to dismiss for failure to state a claim, March 24, 2011, ECF No. 6;

(2) Plaintiffs' motion to remand to state court, April 8, 2013, ECF No. 20;

(3) Pathfinder Energy Services, LLC's[1] motion for joinder of defendant Anschutz Exploration Corporation's motion, ECF No. 85, to preclude Plaintiffs' expert report, December 20, 2012, ECF No. 86;

(4) Pathfinder Energy Services, LLC's motion for joinder of defendant Anschutz Exploration Corporation's opposition to Plaintiff's cross-motion to modify scheduling order and reply in support of Defendants' motion to preclude Plaintiff's expert report, January 16, 2013, ECF No. 93; and

(5) Defendants' motion to strike and/or dismiss pursuant to Federal Rules of Civil Procedure 16(f) and 37(b), April 22, 2013, ECF No. 102.

For the reasons stated below, ECF Nos. 6, 20, 86, and 93 are denied as moot, and ECF No. 102 is denied on the merits.

---

[1] Defendant Pathfinder Energy Services LLC ("Pathfinder") states that it was improperly sued as Pathfinder Energy Services, Inc. DEFENDANT PATHFINDER ENERGY SERVICES LLC'S JOINDER OF DEFENDANT ANSCHUTZ EXPLORATION CORPORATION'S MOTION TO PRECLUDE PLAINTIFFS' EXPERT REPORT at 1, Dec. 20, 2012, ECF No. 86. Therefore, the Court will address Pathfinder by its actual name.

## BACKGROUND

The Court assumes as true all the factual allegations in the complaint for the purpose of deciding the pending motions. According to the complaint, the fifteen plaintiffs are landowners in the Town of Horseheads, County of Chemung, New York.

Defendants are engaged in the business of oil and/or natural gas exploration, production and storage activities in New York. Anschutz Exploration Corporation ("Anschutz") is a Delaware corporation doing business in New York. It operates wells, referred to as Dow 1 and Dow $2^2$, in or near Big Flats, New York. Pathfinder Energy Services, LLC ("Pathfinder") is a Louisiana corporation doing business in New York.

Defendants engaged in drilling activities at Dow 1 Well and Dow 2 Well, both of which are in close proximity to the properties owned by Plaintiffs. Plaintiffs rely on ground water wells for their drinking, cooking, washing, bathing and other uses of water. In or about October 2009, agents of Anschutz attempted to obtain lease agreements from each Plaintiff. Plaintiffs were told that they should sign the lease agreements,

> because their properties would be drilled underneath anyway and they may as well receive the royalties. Plaintiffs were also told if they signed the lease they would receive 15% royalties, but if they did not sign they would receive 13.5% royalties. Anschutz further represented that plaintiffs would never know anything was happening and everything would be the same after the Gas Wells were drilled.

Compl. ¶ 95, Feb. 10, 2011, ECF No. 1-2.

Dow 1 Well was permitted on or about December 9, 2009, and drilling began on or about February 24, 2010. The final depth of that well is approximately 9,711 feet.

Dow 2 Well was permitted on November 18, 2009, and drilling commenced on or

---

[2] The wells were drilled on land owned by John Dow. Thomas J. Santulli letter to Mr. & Mrs. Ronald Sixt at 1, Apr. 6, 2011, ECF No. 22-4.

about March 2, 2010. The final depth of that well is 9,931 feet. Compl. ¶¶ 86–87.

After being vertically drilled, both wells were then drilled horizontally into the Trenton Black River formation to extract oil, natural gas, and/or other petroleum hydrocarbon products. The horizontal portions of the wells are located underneath, or in close proximity to Plaintiff's properties. In or about September 2010, Dow Wells 1 and 2 were capped.

Plaintiffs allege that they can no longer drink their water because it has been contaminated with combustible gases, toxic sediments and hazardous chemicals as a result of Defendants' "improper or insufficient drilling, improper or insufficient operation, improper or insufficient cement casing, and/or improper or insufficient capping of defendants' Dow Wells 1 and 2…, and/or discharges and spills of industrial and/or residual waste, diesel fuel and other pollutants and hazardous substances where were the result of defendants' negligence…." Compl. ¶ 98. Plaintiffs made the following allegation concerning the relationship between the drilling, and the well water problems:

> At the time that the above described affirmative, voluntary, and intentional acts were performed, defendants had good reason to know or expect that the combustible gases, toxic pollutants, and hazardous chemicals would pass through the gas well, rock, soil, groundwater, and/or aquifer from defendants' land to the land of plaintiffs and the neighboring properties.

Compl. ¶ 156.

The complaint raises ten cause of action: (1) Negligence; (2) Negligence Per Se, in violation of New York's Navigational Law and Article 23 of the Environmental Conservation Law; (3) Private Nuisance; (4) Premises Liability; (5) Trespass; (6) Strict Liability under New York Navigation Law Article 12; (7) Abnormally Dangerous Activity and Absolute and Stick Liability; (8) Deceptive Business Acts and Practices in Violation of New York General Business Law § 349; (9) Fear of Developing Cancer; and

(10) Future Medical Monitoring.

## STANDARDS OF LAW

*Federal Rule of Civil Procedure 16(f) 37*

Federal Rule of Civil Procedure 16(c)(2)(L) permits a court to "consider and take appropriate action on … adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems.…" Orders issued in some complex toxic tort litigation lawsuits have specified the production of "*prima facie*" evidence. *See Lore v. Lone Pine Corp.,* No. L 33606–85, 1986 WL 637507, 1986 N.J.Super. LEXIS 1626 (N.J.Super.Ct.Law Div. Nov. 18, 1986). "'The basic purpose of a *Lone Pine* order is to identify and cull potentially meritless claims and streamline litigation in complex cases.' *Baker v. Chevron USA, Inc.,* 2007 WL 315346 at *1 (S.D. Ohio 2007)." *McManaway v. KBR, Inc.*, 265 F.R.D. 384, 385 (S.D. Ind. 2009). Federal Rule of Civil Procedure 37 provides in relevant part as follows:

> If a party fails to provide information or identify a witness as required by [Rule 26(a)](#) or [(e)](#), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). "'The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence.'" *Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (quoting *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)).

Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution. *Ebewo*, 309 F. Supp. 2d at 607. The Second Circuit stated the following in *Design*

*Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006), with regard to precluding testimony:

> "[i]n determining whether the district court acted within its discretion, this Court [must] consider[ ] '(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance....'" Thus, although a "bad-faith" violation of the Rule 26 is not required in order to exclude evidence pursuant to Rule 37, it can be taken into account as part of the party's explanation for its failure to comply.

*Design Strategy*, 469 F.3d at 296 (quoting *Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006) (citing *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir.1997)) (brackets in *Patterson*)).

## DISCUSSION

### *Motion to Dismiss, ECF No. 6*

Conrad Geoscience Corp., a former defendant in this case, moved to dismiss the complaint against it pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on March 24, 2011, ECF No. 6. On December 18, 2012, however, Conrad Geoscience Corp. entered into a stipulation with Plaintiffs to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 41(a)(2), since the parties had resolved the matter between themselves. On June 14, 2013, the Court "so ordered" the stipulation and, therefore, Conrad Geoscience Corp. is no longer a party. Stipulation and Order, Jun. 14, 2013, ECF No. 110. Consequently, Conrad Geoscience Corp.'s motion to dismiss, ECF No. 6, is denied as moot.

### *Motion to Remand, ECF No. 20*

On April 8, 2011, Plaintiff filed a motion to remand this case to State court, ECF No. 20, pursuant to 28 U.S.C. § 1447(c). The basis for the motion was that the Court lacked subject matter jurisdiction since former defendant Conrad Geoscience Corp. was

a New York corporation and jurisdiction for the removal had been based on complete diversity. Defendants opposed the motion, contending that Conrad Geoscience Corp. has been fraudulently joined.

With the dismissal of defendant Conrad Geoscience Corp. from this lawsuit, the basis for Plaintiff's remand motion is removed. *See Newman-Green, Inc. v. Alfonzo-Larraim*, 490 U.S. 826 (1989) (dismissal of the non-diverse party restored complete diversity pursuant to § 1332(a)(2)). Accordingly, Plaintiff's motion, ECF No. 20, is denied.

***Motion to Join Motion to Strike Plaintiffs' Expert Report, ECF No. 86***

Defendant Anschutz Exploration Corporation moved to strike Plaintiffs' untimely expert report. ECF No. 85. Defendant Pathfinder Energy Services, LLC moved to join Anschutz's motion to strike. ECF No. 86. On April 4, 2013, United States Magistrate Judge Jonathan W. Feldman, to whom the case has been referred pursuant to 28 U.S.C. § 636, denied Anschutz's motion. Order, Apr. 4, 2013, ECF No. 98. In the same Order, Judge Feldman granted Plaintiffs' cross-motion, ECF No. 89, for an extension, directing the parties to submit a stipulated scheduling order. Consequently, Pathfinder's motion, ECF No. 86, is denied as moot, as is Pathfinder Energy Services, LLC's motion for joinder of defendant Anschutz Exploration Corporation's opposition to Plaintiff's cross-motion to modify scheduling order and reply in support of Defendants' motion to preclude Plaintiff's expert report, January 16, 2013, ECF No. 93.

***Defendants' Motion to Strike and/or Dismiss Pursuant to Rules 16(f) and 37(b), ECF No. 102***

Defendants have moved to strike Plaintiffs' expert reports for their alleged failure to comply with the Court's *Lone Pine* order, ECF No. 83. *See Lore v. Lone Pine Corp.*,

No. L-33606-85, 1986 WL 637507 (N.J. Super. Ct. Nov. 18, 1986). Defendants argue that,

> the Court entered the *Lone Pine* Order because it recognized that to date Plaintiffs have not identified the contamination they complain of or pleaded a viable theory of causation. Plaintiffs have had more than ample time to address the issue. Nevertheless, Plaintiffs still failed to comply with the Court's order.

Def.s' Mem. of Law at 25, Apr. 22, 2013, ECF No. 102-9. Defendants ask the Court to, "strike Plaintiffs' expert reports, and dismiss their case with prejudice." *Id.*

At issue is the Modified Scheduling Order (the *Lone Pine* Order) which required Plaintiffs to provide Defendants with the following:

> 1. Expert opinion(s) provided by way of expert report(s)…that establish for Plaintiffs: (a) the identity of each and every hazardous substance to which Plaintiffs claim exposure as a result of Defendants' activities; (b) if other than the Plaintiffs' residences, the precise location of any claimed exposure; and (c) an explanation of causation.
>
> 2. Each and every study, report, and analysis that contains any findings of contamination on Plaintiffs' property or at the point of each Plaintiff's claimed exposure to the extent not already provided.
>
> 3. Identification and quantification of contamination of the Plaintiffs' real property that Plaintiffs' claim is attributable to Defendants' operations.

Modified Scheduling Order (*Lone Pine* Order) at 1–2, Sep. 25, 2013, ECF No. 83. Plaintiffs contend that the two expert reports they provided complied with the requirements of the Order, and Defendants reply that,

> [a]fter more than two years of litigation, Plaintiffs still refuse to (i) identify the alleged contamination of which they complain, (ii) quantify how much of it they blame on Defendants, or (iii) explain with any particularity how the claimed contamination traveled a half mile or more from Defendants' wells to theirs—bypassing eighty or more neighbors who have not raised any complaints about the quality of their well water.

Defendants' Reply Memorandum of Law In Support of Motion to Strike and/or Dismiss Pursuant to Rules 16(F) And 37(B) at 2, May 28, 2013, ECF No. 109.

Plaintiffs provided reports from two experts: Paul A. Rubin ("Rubin"), a hydrogeologist and hydrologist, and Gary Gartenberg, a Professional Engineer licensed in New York. Rubin HydroQuest Report ¶ 5, Mar. 12, 2013, ECF No. 102-6 ("Rubin Report"); Letter from Gary Gartenberg, P.E., to Tate Kunkle, Esq., Mar. 11, 2013, ECF No. 102-5 ("Gartenberg Report"). At oral argument, Plaintiffs' counsel asserted that the reports provided the information called for in the *Lone Pine* Order, therefore Defendants' motion to strike and or dismiss should be denied. The Court agrees.

Rubin's Report contained a table of chemicals found in Plaintiffs' well water which he asserted were hazardous. Rubin Report Table 2: Horseheads Groundwater Violations and Indicator Parameter Results, ECF No. 102-6 (page 6 of 47). Listed on the table are values in red, which Plaintiffs' counsel argued were the chemicals responsive to the *Lone Pine* Order's requirement to provide, "(a) the identity of each and every hazardous substance to which Plaintiffs claim exposure as a result of Defendants' activities…." *Lone Pine* Order at 1.

Also at oral argument, Plaintiffs' counsel conceded in response to the requirement to identify,"(b) if other than the Plaintiffs' residences, the precise location of any claimed exposure," the only claimed exposure was at Plaintiffs' residences.

With regard to the final requirement, to provide "(c) an explanation of causation," Plaintiffs' counsel submitted that the Rubin Report, at paragraph 31, answered that requirement. That paragraph reads in full as follows:

> 31. Highly variable groundwater chemistry, as documented in Big Flats wells, indicate that the overall ionic chemistry of the freshwater aquifer has been unnaturally altered (*i.e.*, the natural chemical equilibria of the groundwater flow system has been disrupted). Based on my review of

> water chemistry results of homeowners listed in Table 2 above, I conclude to a reasonable degree of scientific certainty that the groundwater chemistry within the freshwater aquifer has been adversely impacted as a result of Anschutz's natural gas drilling activities. This is also supported by documented chemical analyses from these wells and is incorporated here by reference, some of which are addressed in this affidavit.

Rubin Report ¶ 31.

Not argued before the Court on this motion was the question of whether Plaintiffs met the other two requirements imposed by the *Lone Pine* Order: provision of every study, and identification and quantification of contamination. Thus, the Court assumes that Plaintiffs complied, and if later evidence raises this issue again, it can be addressed with a motion seeking preclusion or other relief.

Though Plaintiffs' expert reports, especially the Rubin Report, are far from models of clarity, they meet the essential requirements imposed by the *Lone Pine* Order. As to their admissibility, the Court will leave that issue for another day. Therefore, the Court denies Defendants' motion to strike. ECF No. 102.

## CONCLUSION

For the reasons stated above, ECF Nos. 6, 20, 86, and 93 are denied as moot, and ECF No. 102 is denied on the merits.

It is So Ordered.

DATED:   June 25, 2013
         Rochester, New York

                                          /s/ Charles J. Siragusa
                                          CHARLES J. SIRAGUSA
                                          United States District Judge